I'll go on to the next case on the calendar. Corbett v. TSA 23-55713. Just for planning purposes, after this argument, we'll take a brief recess before the last argument. Good morning, Your Honors. May it please the Court, as the owner of a small law firm, I personally filed a lot of public records requests with various federal and state agencies, and I can tell you from that experience that the majority of agencies do not give up their records willingly as these public laws require. They either partially deny, fully deny, ignore, or pull some kind of other setter-fuge instead of a proper response. And it's only the availability of court enforcement of these rights under these public records laws that allows these laws to stay alive. FOIA is a very important statutory scheme. We're very mindful of that. We've written on that, published on that, of course. But I'm a little distracted, I think, in this case by the fact that you are a lawyer, and your brief makes that clear, that you do this a lot. You file a lot of FOIA requests. So in this particular case, when the agency responded by saying, we've got this Privacy Act concern, we really are required to know who you are and why you want this information, why didn't you respond? Yeah. The reason why is that the agency is not allowed, in response to a public records request, to demand some kind of certification. When that response came through that they wanted me to sign forms authorizing this and that, I very clearly told them, no, I'm not looking for private records that require authorization. I'm seeking public records only. And they took that response from me and did nothing with it until I sued them. And I think it's important that we don't allow agencies to create their own additional requirements outside of FOIA. Doing that also allows them to continue to frustrate and draw these out. The court can probably read behind the lines here. The reason for these requests was that I had potential clients coming to me saying that they were injured and we were seeking records to see if the agency actually did injure them. If those records don't come within a specific period of time, they're useless. The statute of limitations is exhausted. And that's the whole reason why this needs to happen fast and why the agency has every incentive to pull Sutter Fuge to delay until it's no longer valuable. Right. And opposing counsel is going to suggest that if you'd really wanted the records, and of sign that form to obtain the records. And I guess your position is, you know, I don't have to. That's your position. Correct. You know, there is some long-term game here where, as a lawyer, I need to be able to access public records without this kind of Sutter Fuge in the long term. So that is what I'm seeking here is vindication of the process itself. Right. So there's quite a number of district court opinions, I think. And this is kind of a muddy issue. We don't have a controlling authority on point. We are loathe to suggest that administrative processes should not be exhausted, as you know. And so can you go to what rule you're asking us to announce and how you think it would work? Yeah. So in the court below, there wasn't really a dispute that there was constructive exhaustion, that the agency didn't actually fulfill its duty, which is within 20 working days, to grant or deny the claim. So the question is, what happens when an agency does their duty post-lawsuit? And to that extent, yes, there is a split. One little blank here, but this is not, I think, going to interfere with your argument. We have case law that says if there has been statutory exhaustion because the agency has not timely responded but no lawsuit filed, if they respond outside the statutory period, that is exhaustion. Correct. So the question here is, well, what happens if there has been a lawsuit and they respond after the lawsuit? Correct. So the text of FOIA compels that case law that if they respond before suit, then they can cure constructive exhaustion. But responding after suit. That makes perfect sense, and we have public authority on that, right? Yes, absolutely. Because then if the agency is late, I'll say, after the 20 days, the agency still has an incentive to respond. And that's what the system is set up to require. And so we've said if that happens, if they come in, they come in after 20 days with their response, then the litigant still has to respond. Exhaust, forgive me. Yes, Your Honor, and that makes a lot of sense. And why would you sue if you already have a response, even if it was a little bit late? Well, perhaps you don't think you have a complete response. But at any rate, if you could now pivot to the fact pattern that we have here, which is just the inverse. The agency didn't respond, right, and you sued, and then they responded. Correct. What rule do you think we should have announced for that circumstance? So in that circumstance, there's really two options. There's what the Sixth Circuit and the Southern District of Ohio did, which is basically treat this as two separate cases. The first case for responding on time, if they respond. Then you get the second case to challenge the adequacy of their response. Splitting this into two separate cases does just that. It makes it twice as much burden on the judicial system and twice as much burden on the litigants, both as far as money and time. By the time you get through two cases in the federal courts on a matter that already was delayed because the agency didn't respond on time, we're speaking of years now. But that's not an attractive option. At least for my vote, that's not an attractive option because we are very concerned about the judicial economy. So could you speak to the other option? Sure. So the Fourth Circuit and D.C. District that the court asked us to address went the other way. They basically said, look, if the agency hasn't responded and you sued before they respond, we're going to hear the whole case. And that makes a lot of sense, especially when you consider what happened here, which is that the response was no. Can I back up? I know I'm interrupting you. I'm cognizant of that. I want to apologize. But here's the deal. If it's a black and white and the agency's done nothing, that's one circumstance. And I think that's what you're suggesting. And the case law you're talking about is sort of closer to that. But what if the agency has responded and there's an ongoing exchange, but the agency has neither produced the documents nor really finally said they're not going to? Should this rule that you're announcing or wanting us to announce, rather, should it be a rebuttable presumption or something where the trial court would have some ability to take into account the circumstances? Possibly, Your Honor. But I think the better way of looking at it is there's either constructive exhaustion or there's not. Did they meet this 20-working-day rule, the burden that is not just an acknowledgement, but an actual yes, we're going to produce the records, or no, we're not, or we need more time because of this extraordinary circumstance? I'm not sure I agree with that, and that's exactly what I'm trying to push back on. It might be. And we are very concerned about increasing our very diligent colleagues in the district court, increasing their workload. So I'm wondering if there shouldn't be a baked-in off-ramp in your rule so that if the judge is persuaded that progress is being made, perhaps the agency is searching and trying and there's a good fit, that this should be resolved administratively before the parties are allowed to run to court. That very well may be prudent if there is some kind of circumstance where the agency is truly trying. Here we have a situation where immediately after they said they wanted these additional authorization forms that they're not allowed to ask for, they were told you're not getting them, and they sat on it in one of the claims for over a year. There was clearly nothing going on here. So academically, I think that's a really interesting question, and maybe to alleviate some stress on the district courts, as a practitioner in the district courts who sees them overburdened and would like his motions decided in months rather than years, I'm with you on that one. I would love to see the burden reduced on the district court. Is there a reason you think that wouldn't be workable? Well, how do you determine if the agency is actually working on a claim or not? I think if I were a trial court judge, I would ask the agency to show me that, and it would be on paper. I would be able to see if there's a back and forth, if progress is being made, if it looks like there's good faith. I would certainly take into account the length of time that has passed without a response. It seems pretty simple to me. I think that would be a fair way to do it. I'm not sure that FOIA calls for it in the text of the statute. Perhaps that's an implied remedy that the courts could allow, but I just don't think it applies here in this case or even arguably. Okay. Do you have additional questions? Nope. Looks like you're off the hook for now. Okay. We'll call you back in a minute. Let's hear from the government, please. Good morning, Your Honors, and may it please the Court Assistant United States Attorney Jennifer Jacobs for the Transportation Security Administration. Your Honors, the district court correctly dismissed Mr. Corbett's complaint without prejudice based on administrative exhaustion, so he could pursue an administrative appeal. Now, the district court also correctly noted that Mr. Corbett never argued that an administrative appeal would be futile in this case. He just didn't want to do it. He said, You guys have waited too long. You're done. I get to sue now. Right. I think what Mr. Corbett is advocating is this bright-line rule that if a requester files suit before an agency responds, they're not required to administratively appeal. Right? I mean, that's what he wants is a bright-line rule. Well, we've got a statute that says if you don't reply timely, that is exhausted, and you've got a loophole that the courts have given you, including this court, okay, it's past the time, but you nonetheless respond. We'll say, okay, we'll give you an excuse from the fact that you failed, but you want more. You want to say we're going to make them bring suit, and once they bring suit, then we'll respond, and then we'll get to say that we exhausted. Here's my problem with that as a practical matter. That lets the agency sit on this for as long as it wants, and then finally when a lawsuit is brought, maybe a year, maybe longer, after statutory exhaustion has taken place,  and then the agency says, Oh, well, you know what? I'm going to make you go through the administrative procedure. That doesn't strike me as a very sensible way to go about it, and I see nothing in the statute that allows you to do it. So what's your response? Okay, Your Honor. Thank you. My response is that this court already recognized in Aguiar that it's not following this. It's not going to... That's what I said. We already cut your break. You cut us a break, right. And you said... You'd like some more. But that break, I know we're piling on now. I just feel better signposting that I'm aware of that. But that break is one that's entirely consistent with FOIA, right, and we can have our cake and eat it too there because we're still baking in an incentive for the agency to respond, in fact, to respond quickly before you get sued. And if you do, he still has to exhaust, right. So if you partially respond, he would still have to exhaust. This rule would cut the other way, and I think given the backdrop of Aguiar, I'm concerned that we'd then be in a position where the agency would actually have a disincentive to respond. I disagree that they'd have a disincentive to respond. Okay. I think FOIA is, it's always been a cooperative process between the agency and the requester. That's what you say. I'm not sure that the other team feels that way. I think that's the idea. Well, for example, when an agency does request clarification, a requester can't just sit on their hands and not provide clarification and then run to court and say that they've exhausted. So I do, I heard the laughter and I get the point, but there is a cooperative process here. Well, there isn't always, or it doesn't seem to be, and what do we know? We only see the ones that go off the rails, frankly, and I'm really mindful of that. But can we get your idea about whether this should be a bright-line rule? You seemed to indicate in your first comment you weren't so wild about that. You certainly aren't a fan of the bright-line rule going the way opposing counsel wants it to. Should it be a presumption, where the district court has a chance to take a quick look and see if progress is being made, and as long as it is, require exhaustion? Because, after all, the goal is to get the documents produced. Yes, I do think that giving the district court some discretion to decide whether or not there is any futility in pursuing administrative proceedings is the right way to go. Has any court done that? I don't think so. I don't think so. I think it's a little bit more akin to the Miller case that you asked us to address, where they said timeliness was exhausted, but the substance of the response wasn't. Can I ask about, if we were, you know, in theory there's two bright-line rules and then there's this presumption rule sort of in the middle. One would be the bright-line rule that if they beat you to the courthouse before you respond, even if you blew your deadline, then exhaustion is excused. The other would be the bright-line rule that you want, I think, which is if they beat you to the courthouse but then we respond, then they have to exhaust, which has, I think, this disincentive problem. And then the third would be where, you know, their bright-line rule but not a bright-line that you look at, that you look at like, you know, the agency gets a chance to come in and explain, oh, you know, we don't have a policy of, like, waiting until people sue. We just were all on holiday or something. I don't know. But that creates, but one problem with that third one is it actually creates, and everybody's overworked, right? That creates extra work for the district courts, I feel like, because the district court, if we have one or the other bright-line rule, they just get to decide whether or not this case goes forward. But the third one, they have to hold a hearing and take briefing, and that's a whole other step. Is that a good or bad thing? Well, I think it would be a good thing. I ask you to speak to the baked-in assumption. Would there need to be a hearing? I don't know that. I don't know. So if the goal would be to see whether or not the administrative process is working, would there need to be a hearing? I don't know how a decision would be made without a hearing, but there could just be briefing. Yeah, maybe briefing, but the judge would have to enter some sort of ruling on that issue, I feel like. It could be a threshold issue the judge would have to decide. Maybe I misspoke. To extend a hearing is an oral argument and all that. I suppose it would be like any other motion. The judge could decide whether that would be helpful. But it would be another step. Right, right. I guess I'm trying to figure out whether or not imposing that cost is – I'm trying to think what my district court colleagues would think of that, whether they would just prefer, give me one bright line one way or the other, but I don't want this extra. The other bright line we'd be talking about is the district court, throwing it all into the district court, as opposed to requiring that it be worked out in the administrative process. This would be a midpoint that would allow the district court to exercise discretion to send it back. It would. Yeah. It would. Yeah. Okay. Are there additional questions? Anything else you want to add? Well, I will say with regard to the concern about conserving judicial resources, currently a requester who doesn't get a response in 21 working days can file his lawsuit, and then the district court gets – they must be the first person to make a pass on all of the requester's claims, timeliness, the adequacy of the search, and the lawfulness of the response. And they do that without any kind of factual record that is developed when there's a fulsome administrative process. And in some of these FOIA cases, having that factual record developed by the agency can be super helpful to the district court. So I wouldn't say always the two-lawsuit concern uses as much judicial resources as the current state of affairs where a requester can go into court on that 21st working day and have the district court make all the decisions without the benefit of an administrative process. Thank you for your argument. All right. Thank you. Counsel, you saved a little bit of time, I think. Oh, you saved quite a bit of time. Thank you, Your Honor. The court seems to be contemplating one bright line, another bright line, or some kind of middle path. I appreciate that you've been listening. I'm not sure either of my colleagues are so warming up to that idea. But I'm just wondering what the options are because there are reasons for the exhaustion requirement, and at least one of us isn't wild about throwing these into district court if we don't have to and increasing their workload. Yeah, and I would much rather not have these cases in the district court. So you do this often. I'm curious about this, what we might call the middle ground approach, which I'm probably better labeled for, but you know what I'm talking about. Yes. You do this all the time. If this was brought to a district court, is there a feeling like the district court would be like, wow, this is a good chance to get this off my docket, and so the district court would often be ruling against you? Or is this something that would be helpful to you? What is your thought about that? I definitely had a few times where I thought the district court just wanted my case off the docket as a plaintiff's attorney. Any kind of rule that's not a bright line does invite proceedings, it invites hearings, it invites arguments. If there was a way to make that middle ground more of a bright line rule, there was an easy way to figure out if there was some kind of process going on or not, that would be amazing. I think that Congress probably needs to speak on this more than the courts. What options are available under the existing FOIA for the agency to say, we're working very hard on it, we blew the statutory deadline because it is so short, we need more time, don't sue us? Yeah, so basically that 20-working-day window allows them to draft a response that says that there is some kind of extraordinary circumstance that requires additional time, whether that be we just lost our FOIA officer or this is so voluminous that we need time to analyze or what have you. So that is available to them. And I believe if they had responded in that regards even after the 20 days but before suit, that still would have precluded constructive exhaustion. Yeah, and how stringent is that requirement of extraordinary circumstances? From my understanding. I'm not trying to get sort of a real-world sense of this. Yeah, so a lot of agencies, in my experience, claim their extraordinary circumstance is they have a backlog. And the courts, I don't think, have taken very kindly to that. So the extraordinary circumstance required by the courts is something greater than we've got a lot to do. But it does not require something so esoteric. To Judge Fletcher's question, how often do you get anecdotally, how often do you get the response, we need more time, extraordinary circumstance? I'd say the more common response is simply no, we're denying it under a list of exemptions, and then you have to figure out what those exemptions possibly mean and how they could apply. There are some agencies that seem to have a blanket policy of just denying everything at the first level, and then you get the real opportunity to ask for your records at the administrative appeal level, which also isn't great, but at least it's not burdening the court. And here we didn't even have any of that process, unfortunately. If I can speak to just one more point. You have two minutes left. Go right ahead. Sure. Even if we take any of those three approaches, the bright line rule on one side or the other, the middle ground, a problem with the district court ruling is that it essentially precludes attorney's fees. So even the Sixth Circuit and the Southern District of Ohio that had the bright line in the way that favors the government would have held that my claim that they didn't respond on time was moot. This court here held that the claim that they didn't respond on time was constructively exhausted, which dismisses the mark under any case law, under any possible rationale. So even if the court wished to adopt the Sixth Circuit bright line, I would just ask that the court reverse the reasoning for the dismissal such that attorney's fees can be had, because this was a situation where we wouldn't have gotten records unless we sued. We sued. We got the records. Well, we got a response, even if not records. So it should be considered a prevailing party. Thank you, Your Honor. Thank you both. We'll take that case under advisement. Counselor, we're going to take a five-minute break, and then we'll be back. All rise.
judges: FLETCHER, CHRISTEN, VANDYKE